UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     ICHIBAN, INC. | ) | Case No. 06-10316-SSM |
| | ) | Chapter 7 |
|                  Debtor | ) | |
| | ) | |
| RICHARD A. BARTL, TRUSTEE | ) | |
| | ) | |
|                 Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 06-1134 |
| | ) | |
| RICHARD A. OCHSNER, *et al.* | ) | |
| | ) | |
|               Defendants | ) | |

**MEMORANDUM OPINION**

Before the court are competing motions for summary judgment filed by the plaintiff, Richard A. Bartl, Trustee, and defendants Richard A. Ochsner and Crusader Industries, LLC. A hearing was held on February 20, 2007, at which the court heard the contentions of the parties.

Background

Ichiban, Inc. ("the debtor") is the subject of an involuntary petition filed against it in this court under chapter 7 of the Bankruptcy Code on April 3, 2006, by four creditors. The debtor did not oppose the petition, and an order for relief was entered on May 3, 2006. Richard A. Bartl has been appointed as chapter 7 trustee.

At one time, the debtor corporation—90% of which was owned by Mr. Ochsner and 10% by his mother, Bonnie Ochsner—had owned a 16.3333% interest in a limited liability company known as I3, LLC. The sole asset of I3 consists of a 7.4 acre parcel of real estate located in Prince William County, Virginia. The original contract purchaser for the property had been the debtor, but the debtor evidently did not have the financing to complete the purchase and assigned its rights under the contract to $I^3$ in exchange for a $600,000 promissory note. On July 16, 2004, the debtor transferred its membership interest in I3 to its president, Mr. Ochsner, who was also the managing member of I3 and held a 51% interest in that entity. The purported consideration for the transfer was an $87,000 promissory note from Mr. Ochsner and his promise to pay up to $250,000 of legal fees that Ichiban owed to a law firm that was representing it in a lawsuit against one of its customers, a company called GTSI.[1] It is undisputed that neither the promissory note nor the legal fees have been paid. Shortly prior to the transfer, Mr. Ochsner had boasted in an email that the property had increased in value ten-fold from its original $1 million purchase price. I3 subsequently entered into a written contract to sell the property to Centex Homes for $15 million, subject to certain adjustments.

In the meantime, the debtor not only did not prevail in its lawsuit against GTSI but had judgment entered against in the amount of $1,448,324 for GTSI's legal fees. After obtaining its judgment and learning of the transfer, GTSI brought an action in the Circuit

---

[1] Under the agreement, between the debtor and Mr. Ochnser, any legal fees paid would be a credit against the $87,000 promissory note.

Court of Prince William County, Virginia, attacking the transfer of the I$^3$ interest as a fraudulent conveyance.

The present action was filed by the chapter 7 trustee on July 13, 2006, and is pleaded in five counts, which largely mirror the allegations in the state court litigation.  Count I seeks to avoid the transfer of the I3 membership interest to Mr. Ochsner under § 55-81, Code of Virginia. as a voluntary conveyance.  Count II seeks to avoid the transfer under § 55-80, Code of Virginia, as a fraudulent conveyance.  Count III seeks to avoid the transfer under § 548, Bankruptcy Code, as a fraudulent conveyance.  Count IV seeks recovery of all Ichiban assets transferred to Mr. Ochsner in breach of his fiduciary duties to the corporation (and, once the corporation became insolvent, to its creditors).  Finally, Count V seeks a determination that a separate company set up by Mr. Ochsner called Crusader Industries, LLC ("Crusader"), is liable for Ichiban's debts under the theory of successor liability.  Discovery has been completed and trial is set for two days beginning April 23, 2007.

## Discussion

### A.

Mr. Ochsner and Crusader seek summary judgment in their favor on all counts.  The trustee, for his part, concedes that one of his claims is time-barred, but otherwise opposes the defense motion for summary judgment and affirmatively moves for summary judgment in his favor on his state law claims under §§ 55-80 and 55-81, Code of Virginia.

Summary judgement is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

3

a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c).  Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1985).  In ruling on motion for summary judgment, a court should believe the evidence of the nonmovant, and all justifiable inferences must be drawn in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  However, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  *Id*. at 248, 106 S. Ct. at 2510.

B.

As an initial matter, the trustee concedes that his claims under the Bankruptcy Code's own fraudulent conveyance provision in Count III are time-barred.  The Bankruptcy Code allows a trustee to avoid any transfer made with actual intent to hinder, delay or defraud creditors or made for less than reasonably equivalent value at a time when the debtor was insolvent or was made insolvent by the transfer.  § 548(a) and (b), Bankruptcy Code.  Prior to the amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), the statute reached transfers made within one year before the filing of the bankruptcy petition.  BAPCPA extended this to two years, but only for cases commenced more than one year after the enactment of BAPCPA.  BAPCPA § 1406(b)(2).  The enactment date of BAPCPA was April 20, 2005, while the commencement date of the debtor's bankruptcy case was April 3, 2006, just shy of

4

the one-year anniversary.[2]  Accordingly, the reach-back period under § 548 is governed by the one-year limitation that applied prior to BAPCPA.  The transfer of the debtor's interest in I3 to Mr. Ochsner occurred on July 16, 2004, more than one year before the commencement of the bankruptcy case.  Accordingly, the transfer is not subject to avoidance under § 548, and summary judgment will be entered dismissing Count III.

C.

Although the trustee cannot attack the transfer under § 548, he may alternatively avail himself of his right under the Bankruptcy Code to set aside any transfer that could be avoided under state law by a creditor holding an allowed unsecured claim.  § 544(b), Bankruptcy Code.  Virginia law, in turn, allows transfers made with actual intent to hinder, delay, or defraud creditors, as well as transfers not made on "consideration deemed valuable in law" by an insolvent transferor, to be set aside at the instance of unpaid creditors.  §§ 55-80 (fraudulent transfers) and 55-81 (voluntary transfers), Code of Virginia.  The statute of limitations for an action under § 55-81 is five years.  § 8.01-253, Code of Virginia.  Actions under § 55-80 are not governed by a specific statute of limitations but are subject only to laches.  *In re Massey*, 225 B.R. 887, 890 (Bankr. E.D. Va. 1998).  Accordingly, these claims remain viable.

The court has carefully reviewed the depositions, affidavits, and exhibits.  Although the trustee has put forward a strong case, the court concludes that material facts are

---

[2] Even though an order for relief was not entered until May 3, 2006, it seems clear that an involuntary case is "commenced" when the petition is filed, not when the order for relief is subsequently entered. § 303(b), Bankruptcy Code ("An involuntary case . . . *is commenced* by the filing . . . of a petition under chapter 7 or 11[.]") (emphasis added).

nevertheless sufficiently in dispute that assessment of Mr. Ochner's testimony in light of his demeanor on the witness stand at trial is necessary to resolve the dispute. The court similarly determines that the evidence is sufficiently controverted that summary judgment is not appropriate in favor of defendant Crusader on its motion for summary judgment. For that reason, except for the dismissal of Count III, both motions for summary judgment will be denied.

      A separate order will be entered consistent with this opinion.

Date: _____      _____
                                          Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge

Copies to:

Seth Charles Berenzweig, Esquire
Albo & Oblon, L.L.P.
Courthouse Plaza
2200 Clarendon Boulevard, Suite 1201
Arlington, VA 22201
Counsel for the plaintiff

John T. Donelan, Esquire
Law Offices of John T. Donelan
125 South Royal Street
Alexandria, VA 22314
Counsel for the defendants